Case number 14-5196, George R. Jarkesy, Jr. et al. Appellants v. Securities and Exchange Commission. Ms. McCullough for the appellants, Mr. Frieda for the appellate. Mr. Jarkesy, Jr. v. Securities and Exchange Commission. Good morning, Your Honor. Good morning. May it please the Court, I'm Mike McCullough representing George Jarkesy, Jr. and Appellant 28. I'll just refer to them as we have in our brief as Jarkesy for shorthand. Your Honor, this case challenges SEC administrative enforcement authority in a case that prior to Dodd-Frank could only be tried in federal court. As a result of the powers transferred by Dodd-Frank, the SEC no longer needs Article III courts and indeed that was the very intent of the legislation to make the authority in the SEC's administrative enforcement proceedings truly coextensive with that of federal courts. For several reasons, that transfer was unconstitutional and the administrative proceeding against Mr. Jarkesy is void. Now we raise two facial challenges and a due process prejudgment challenge. While the district court below had subject matter federal question jurisdiction to resolve the issues in this case, pursuant to its holding and track, we're asking this court to invoke its powers under the All Writs Act to protect its current and future jurisdiction to decide Jarkesy's constitutional claims now. The problems with this transfer of authority to the SEC are several. Number one, the Seventh Amendment. The SEC enforcement today in the wake of Dodd-Frank is fundamentally different from historical enforcement practices. Dodd-Frank in fact created an unprecedented enforcement scheme allowing massive punishment that can be meted out unilaterally against ordinary citizens by this agency where previously for many decades this power could only be exercised by Article III court. So that's a Seventh Amendment problem and you also say that the discretion to choose federal court or the agency is a separation of powers problem. Correct, Your Honor. I just want to get that out in terms of your merits claim, but obviously we have to figure out the issue of the preclusion here. It just strikes me that, and this is a question for both sides, just navigating the case law here is a challenge because you have cases like Free Enterprise and Matthews v. Eldridge and McNary and then you have cases like Elgin. And I'm curious how you would propose that we navigate that in a principled way. Through the subject matter jurisdiction. I know the way you're going to navigate it has you winning, but what's the principled line we would draw for future cases? Well, Your Honor, I will concede that the whole area of subject matter jurisdiction is not a model of clarity. It almost becomes metaphysical at times. And I think the easiest way to resolve it here, number one, we have briefed ad nauseum in the briefing the three prongs of the Free Enterprise Thunder Basin formulation. Because under this statutory scheme, which is review of a final order of the commission by this court, which in turn is, at the commission level, is review of the administrative proceeding from the issuance of the order instituting proceedings, the OIP, up to the initial opinion by the ALJ. All of these claims, these constitutional problems or underlying structural problems and or result or emanate from events occurring outside of the administrative proceeding. And as we said, more stress in our reply brief than our principle brief on this point. We don't believe that the whole free enterprise formulation makes sense, fits well within the context of this case with these challenges, where you have an equal protection violation that occurs prior to the initiation of the AP. You have a separation of powers problem that is just an underlying structural issue. All of these issues are irrelevant to the merits and the conduct of the administrative proceeding. So when you mentioned the doctrine, I think you called it the Thunder Basin Free Enterprise Doctrine, and there's also Elgin, which is not as good for you, but can you explain how Elgin is distinguished based on what you just told us? Yes, Your Honor. Elgin, in fact, cites McNary v. Haitian Refugee Center and itself in Elgin draws the distinction between those two situations. Elgin, as I recall, that was a merit selection review board proceeding. It's a civil service proceeding, and there were all kinds of discovery devices available in that proceeding. You didn't also have an interested party conducting the proceedings in that case. That process, that review process included depositions, interrogatory, almost everything that you would see in a federal court. So one of the issues, of course, is whether you can obtain meaningful review of your issue and you can therefore develop the issue below before you get up to a circuit court. The court in Elgin cited McNary as the other kind of situation where you have a much more Spartan agency adjudicated process. So is that your main distinction with Elgin? I know that you and the SEC disagree on what kind of fact development proceedings are available in the context of the administrative proceedings that are going on. So it sounds to me like your argument for a distinction with Elgin is that if you're right about how constricted it is, then Elgin's different. But if you're wrong about how constricted it is, then maybe Elgin's not so different. Perhaps not, and I'll get to track in a moment. Maybe I should get to it very quickly, and then I'll directly address Your Honor's question. Under track, this court can look at a provision or an excerpt I can give you from track where the court says, as Judge Leventhal emphasized to national advertisers, only in rare instances is a non-final agency action reviewed in the teeth of a general denial of jurisdiction. Thus, we generally will hear only cases of clear right, such as an outright violation of a clear statutory provision, or violation of basic rights established by a structural flaw and not requiring in any way a consideration of the interrelated aspects of the merits. That's this case. And so regardless in track where the circuit court had exclusive jurisdiction to review what in that case was, it was all about the final order or the lack thereof, the delay in the issuance of the final order, this court found it had exclusive jurisdiction over that, which means to the exclusion of the district court, but still was able to take up a structural flaw or a clear right under the All Writs Act to protect its jurisdiction. Once the case is here, it's here. And this court is going to have either jurisdiction on reappeal if it remands to the district court, for example, on the equal protection challenge, which just can't be litigated by any stretch adequately for a number of reasons in the context of the SEC process. What is the equal protection argument? Is it selective prosecution? Is that the idea? Your Honor, it's a class of one equal protection claim, which alleges that this target, Jargossi, was treated differently from other identically situated SEC targets. During the same time period that Jargossi was charged, as the- Yeah, so what's the evidence that you want to gather? Is it that you want to question the enforcement division of the SEC? Yes, Your Honor, and we probably would want to look at commission records as well, as we alleged in the lawsuit. So you want to take the deposition of the general counsel and other individuals working in the enforcement division? Well, as you can imagine, we'd probably like to. Whether we need to do that, we never got that far in the district court. I thought you did. I thought you sought a subpoena to do just that. We issued a subpoena in the context of the administrative proceeding to the commission for its records pertaining to the selection of the administrative proceeding, as opposed to taking this to federal court. I think we had eight or nine other identically situated targets of SEC enforcement charged under the exact same statute that at the same time period were allowed to defend themselves in federal court, while Jargossi got relegated to the SEC's internal courts with the truncated summary procedures and greatly diminished defensive procedures. But for purposes of the free enterprise Elgin point, that's a tougher hill for you to climb than the Seventh Amendment. Kind of the day after the statute's passed, we have this constitutional argument teed up. Your Honor, I don't think it's more difficult, if you're asking about the equal protection challenge. I don't know. I'm not talking about the merits of it, but it doesn't appear from the face of the statute necessarily, obviously, that there's going to be a class of one situation. Whereas under your theory, the day the statute's passed, we have a constitutional argument. Whether it's meritorious or not is a different question, but a constitutional argument about the structure that's set up by this statute as being violative of the Seventh Amendment and separation of powers. Correct, Your Honor. Why can't that claim be made in the Court of Appeals after administrative proceedings have ended? That claim, the separation of powers claim? Right. It can be brought. So what cases stand for the proposition that you can bypass the normal review from an administrative agency to the direct review to this court and go into district court because you've got a challenge that doesn't depend on the evidence? Because of this case. This case is distinguishable from all those cases because we're not complaining. None of these claims, including equal protection, complain about what's going to be in the final order, complain about the conduct of the administrative proceeding or the findings of the administrative proceeding. The final order is completely irrelevant. It's an event that occurred prior to the administrative proceeding. Yeah, but the argument is, I guess your argument is, that the SEC had no authority to adjudicate this because it deprived us of our Seventh Amendment rights. Well, that is correct, Your Honor. These are all alternative claims. As I understand your submission, it's that the facial challenges can go directly to the district constitutional challenge, directly to the district court because there's no evidence to develop. And the other challenges you have are as applied, and they can go directly to the district court because there is evidence to be developed. There's evidence to be developed that can be developed. So all constitutional challenges, under your theory, go to the district court. Well, we carefully picked these constitutional challenges that we're talking about today because they are outside of the administrative proceeding, which under the narrow jurisdiction of the SEC is outside of the commission. Didn't Elgin specifically reject any kind of an analysis based on whether it's an as-applied or an on-its-face constitutional challenge? I thought Elgin just completely rejected it. Well, and we're not stressing that. We're stressing what the essence of the claim is, that it doesn't complain about anything occurring with regard to the administrative proceeding. All of these things occurred outside, including the prejudgment issue, which was another party's test. It doesn't apply to anything occurring in the administrative proceeding? I thought your argument was there shouldn't be an administrative proceeding. So it not only covers things happening, it covers everything that's happening. Well, it covers the very existence of it, but the review allotted by statute for commission review in issuing the final order and circuit court review of the final order is restricted by statute to whether or not the target, the respondent in an administrative proceeding is culpable or not for securities fraud. And all of the incidents surrounding the conduct of the administrative proceeding, evidentiary issues, et cetera, these are all, we have claims that will go up in the administrative appeal, which is pending, that relate just to what happened inside the administrative proceeding. One thing that seems different about this case than free enterprise, because I think as Judge Randolph was pointing out, a lot of what's in Elgin cuts against you. But you have free enterprise, I guess, would be your main answer under the case law. But one thing that seems different about, and of course, Elgin comes after free enterprise. But if we go back to free enterprise, one thing that seems different about free enterprise is just the fact that in that case, the administrative proceeding hadn't been kicked off, whereas in this case it has. And so you've got a proceeding in place right now, the culmination of which will be a court of appeals resolution, at which every claim that you raise can be aired and resolved. Every claim that we raise now can be resolved because if we lose here. If you lose in the SEC, if you win in the SEC, the claim won't be resolved in the court of appeals, but you'll have been subject to the expense of the proceeding that you don't think ever should have taken. There's always the theoretical chance that we could win the SEC. Yes, Your Honor. But I thought your point was, maybe I'm wrong here, but I thought the idea was for forced, we can't raise this claim in a court unless we actually lose before the SEC, but the existence of the procedure or the proceeding is something we want to challenge and not have to go through the SEC. And we believe that a void proceeding is something we shouldn't have to go through, and there's a Supreme Court precedent on that, particularly with regard to prejudgment. I don't know if that's successful. As Judge Cernovasti and Judge Randolph have both pointed out, there's, Elgin's a problem for you, Free Enterprise is a problem for them, so. And we would really stress McNary versus Haitian refugees. Right. And you have other cases, so Free Enterprise plus McNary plus Matthews v. Eldridge, but they have Elgin plus Thunder Basin and a couple of others as well. That well summarizes it. It's our structural issues that are our primary issues here in this court. And if I could just, with the Court's indulgence, continue to answer that question. Can I ask one thing? I'm sorry. You will be able to answer that question. But if you were to prevail in this case, it wouldn't preclude the SEC from continuing its enforcement proceeding unless you actually prevail or obtain a stay from a federal court, correct? Correct. In other words, there's no, I just want to make sure that your position is that if you win on this theory and you're allowed to pursue the claim in federal district court, that shouldn't slow down the SEC at all unless you actually prevail on your constitutional claim. Well, correct to the extent, you know, we're requesting, and the suit is about injunctive, really. I know, but the point is, the SEC can keep going unless and until a federal court says, no, actually you succeed or you get a stay by showing a likelihood of success on those constitutional claims. They can proceed, and we're asking this court, yes. And we're asking this court to ensure a stay. In other words, the mere existence of your suit doesn't stop the SEC in its tracks. Correct. Now, if this court holds, if this court in this appeal holds that the Dodd-Frank unprecedented grant of jurisdiction over ordinary citizens for massive penalties violates the Seventh Amendment, one would think that the SEC would decline to continue to pursue the case. Now, what I meant by prevailing, the suit was meant in prevailing, having the district court, your primary argument is just to have the district court to consider this, I think. You would want us to go consider the merits, too, but assuming that didn't happen. Correct. That was our original suit was to get the court to do that. The district court, which we filed the day after the commission in late January of 2014, the day after the commission denied our interlocutory appeal for prejudgment, the next day we filed that suit. And then the next business day, the administrative proceeding began as the court had denied the temporary restraining order. So going back to the question, the structural claims are, again, first, that the Seventh Amendment, under the Atlas Roofing, limited to a situation that doesn't exist here. And under Toll and under Gran Financiera, that sort of trilogy of cases, we see that the Seventh Amendment requires a situation where Congress exclusively, Congress exclusively assigns a certain category or class of cases to administrative adjudication, which has not happened here. And also, in all of these cases, they keep stressing it's permissible for Congress to do that, only if juries are incompatible with the statutory enforcement scheme that Congress has created. That's usually the case for technical OSHA violations, as in Atlas Roofing. Here, we've got juries have been doing, have been adjudicating basic common law securities fraud and statutory security fraud cases for many decades. And all of a sudden, the Dodd-Frank amendments, which is four paragraphs in a very lengthy bill, but then it did something very profound and very different and unprecedented in federal administrative law, giving this agency that power. It's if the court doesn't find that that's a Seventh Amendment violation, then there's obviously something wrong with the first ever non-exclusive assignment of this category of claims for massive punitive sanctions to an administrative agency where they get to pick and choose, essentially willy-nilly. And first of all, they can't do it, they have to do it exclusively. There's never been a case where they've given the agency identical claims for identical sanctions, where they've given an agency free reign to pick on its own. If they're going to do that, and this would be the first time a court's upheld such a thing in this case, and if this court's going to do that, then we have to look at the discretion that's been conferred, the legislative power to make that decision as to which category, classes of cases, are going to be relegated to administrative non-jury adjudication. Whether that has any guidelines, whether it has any intelligible principle behind it, the SEC's conceded that. Well, that's the merits, and we're still on reviewability. So why don't we hear from the SEC. We'll give you plenty of time on rebuttal. Thank you, Your Honor. May it please the Court. I think this case demonstrates exactly why the line of cases starting with Thunder Basin recognizes that the agency process, where it's fairly discernible from the intent of Congress to submit claims through that process, comes out with the right result. There's a fairness innate in that, and there's an efficiency in that process. There are threshold issues here that counsel has pointed out that need to be determined by the commission in the first instance. Well, suppose the claim were in, just think of some claim that's probably settled by current law, but just a multi-member SEC is unconstitutional. Okay. And is it raised in this case, Your Honor? Right. So that kind of claim, or that Dodd-Frank's provision assigning power to the SEC is unconstitutional, the general assignment of investigative power to the SEC over this topic is unconstitutional in some respect. I mean, those kinds of claims that go to the agency structure or the existence of the agency, are those kinds of claims different? Well, Elgin would suggest no. But what about Free Enterprise? Free Enterprise was different. I mean, Free Enterprise is different because you had to bet the farm in order to bring your claim, according to the Supreme Court. And don't you have to bet the farm here because you have to lose your administrative enforcement proceeding? No. That's simply constitutional avoidance working its way through. I mean, this court has a... It's not the case. You should have cited it. It's just an old canning. Okay. I was also thinking Deaver v. Seymour. Everyone's going to a district court, and yet the Supreme Court decided that the structure of the NLRB was unconstitutional because of the recess appointment. He didn't need a district court for that. Okay. But the difference for our purposes for our case and those cases are that here you have a process that's in place that's been invoked, that's been started. There is no additional... I think their argument is or their response is that you can raise all those arguments there, but you can also, if there's an alternative route, you can proceed. Certainly in Free Enterprise Fund, you could raise the arguments in the defense and any enforcement proceeding, but you can also, someone also has the opportunity to bring a district court suit, and there will be preclusion issues depending on which case gets decided first, et cetera, potentially in some matters, right? Well, I mean, that's their argument, but I think if that were the case, I think that... In other words, certainly these kinds of issues will arise through the administrative route and then go to the Court of Appeals, but the same issues could arise in the district court suit and in Free Enterprise Fund and relate McNary and Matthews v. Eldridge. The court said that's fine because it was collateral. I'm trying to figure out what's collateral. Well, we've been trying to figure that out as well. I mean, I could point you to what this court has said is collateral, but ultimately I think it's more helpful to go back to what is meaningful judicial review. I mean, I think if you look at the three factors for the exception that McNary and then Thunder Basin quotes and then Free Enterprise applies, it really boils down to whether or not there's meaningful judicial review of the claims, and undoubtedly there will be meaningful judicial review for Mr. Jarkis's claims at the end of the day. If he loses. Yeah, if he loses. Not if he wins. Not if he wins, and so in that circumstance... Even though his argument is that he shouldn't have to go through this proceeding. Right, and Standard Oil had no problem with that. So how is that different from Free Enterprise Fund? Well, again, Free Enterprise Fund was the farm case. You had no clear path to meaningful judicial review. In that case, the court said we're not going to require someone to violate a random rule or wait to challenge some random rule based upon their constitutional defense. In that case, you could go to district court, but that's the exception, not the rule. If the exception were the rule, we wouldn't have Thunder Basin. Well, I don't know if there's an exception or a rule, given that you can line up a bunch of cases on both sides. Right, but you can line them up, but I think the weight falls on our side in this case. I mean, it's not just Thunder Basin. It's not just Elgin. It's Stern Murgers. It's Daniels. It's John Doe, Inc. It's Fornero. All of this court's cases all fall squarely on our side of the ledger on this. And the reason being is he can bring his claims at the end of the day. There's clear case law recognizing that merely having to go through the process to bring your claims is not itself a constitutional harm that needs to be avoided because he has legal relief at the end of the day. I mean, if Deaver v. Seymour could come out the way that it comes out, then, of course, you have to subject yourself to an agency administrative proceeding. Can I ask you a question about suppose this were someone who were not the subject of current enforcement proceedings but is a regulated entity under this statutory scheme? Same result? In this case? If he's not a regulated entity. He's a regulated entity, but there's no enforcement proceeding that's been initiated. Yeah, it's hard to envision that case because all of Darkeese's claims really arise from the commission's administrative proceeding. Well, no. A claim that the statutory scheme on its face is unconstitutional because it transfers this discretion.  Right. I understand. But that's the theory is that on its face, the day it was passed, we see something unconstitutional in this statute and that it grants huge new enforcement authority. Again, I'm not characterizing it, but that's their claim. So someone who's a regulated party says, I don't want to be subject to a regulation under that scheme and brings the suit even though nothing's been initiated against them yet, which is what will result there. Right. Well, I think what you have to look at for that case is what is the harm that the person's under? It's a different scenario than in the PCAOB case. What they're complaining about in Dodd-Frank is extending the commission's discretion to bring an AP against unregistered persons, which could essentially be a large segment of the security. What is the situation for issuers, for regulated persons, for those registered? Is there a discretion within the SEC to proceed to district court or run an administrative proceeding? Yes, there is. And how long has that existed? Gosh, you're putting me on the spot here. It's been a very long time because I can't remember when this issue has ever come up before. Under the 34 Act? Under the 34 Act, we could bring certain cases administratively. I just can't recall which class of cases. I think broker-dealer, probably. But, yes, we've had that discretion for a very long time. Your point there is that the merits of their constitutional arguments are weak. Right? Well, no, but my point for— Which is a fair point, but it doesn't really— Well, back there— —a fair point for you to make, but it's not really the one before us. Right. No, but my point for your question was the constitutional harm that they're making under Dodd-Frank really is about when you're bringing in AP. So anyone who would be subject to that harm would be before the admissions administrative process. I guess I think what we're trying to do is explore if there's a scenario in which free enterprise— your argument is that Elgin looms large and the line of cases that takes control. And I think what we're trying to explore is, is there a scenario in which free enterprise takes control? And one distinction would be a case in which the proceeding hasn't been initiated yet. And suppose that the person, the regulated party, has standing under some theory, and so they have a concrete enough stake in the structure of the commission that they can bring the claim. Then that starts to look a lot more like the one in free enterprise. Again, I have a difficulty envisioning such a claim, and I think it has a lot of other— It's difficult about envisioning the claim. Is what you're saying that's what's difficult to see how somebody who brought that claim would have standing to bring it? Is that what you're saying? Yeah, basically. Because the claim is not that difficult to envision. No, the claim, you're absolutely right. But I think one of, I think, a few issues that that hypothetical claim would raise is how are you going to be a person that's harmed by the process if you're not subject to the process? In free enterprise, that wasn't a problem. Right. Because the rules that the accounting board would promulgate would, the individuals who brought the suit would be subject to. But here, the rules that you promulgate, or whatever the SEC's rules are, are wholly independent about how you proceed in an enforcement. Exactly. Yeah. I couldn't have said it any better. I find it odd for this issue to draw the line based on whether the enforcement proceeding has begun, as you can probably tell from my questions. I see that making a standing or ripeness argument, but for this line of cases to say, oh, well, you have to go through the court of appeals route if the agency started investigating, but you can go to the district court if the agency hasn't started investigating, strikes me as a little odd. I think if it's, I think if you're boiling it down to just that factor, yes. But I think in the context of the hypothetical you're opposing, I think it works. All of these cases have a bit of a facts and circumstances application. That's why you could have the same case, you know, the same standard, and yet you have Thunder Basin and you have free enterprise. I mean, there's the devils in the details. This issue came up with respect to the NORB years and years ago, and the Supreme Court did carve out an exception for district court review, even though it's direct review after the NORB issues an order in the cases called Levin v. Conning. Are you familiar with that? Yes, I am. But, again, that was a different scenario, and Leadom was one of the cases that I can't recall. One of our cases had distinguished it. Maybe it was Sturm-Merger. It was this court and Sturm-Merger. And so, you know, it's, again, that's one of those that goes on the other side of the ledger. But I think if you look at the details and you recall the real policy reasons why the Supreme Court recognized in Thunder Basin that preclusion. Well, I guess one distinction, if you draw a distinction between a situation in which the enforcement proceeding has been initiated and one in which it hasn't, and you assume that the party in the latter situation does have standing, then one distinction is the one that was identified by the Supreme Court in free enterprise, which is that you don't have the strange situation in which somebody has to affirmatively incur a sanction in order to create. Now, I suppose somebody could take the position, well, that was one thing that they noticed, but that wasn't the be-all, end-all, and there were other considerations that led to the decision in free enterprise, too. But as to at least that observation, there is a material distinction between the scenario in which a proceeding has been initiated and one in which it hasn't. Again, I couldn't agree more. I think we view, I mean, it's hard not to view free enterprise as the bet the farm case. I mean, that's the classic language from it. What about McNary and Matthews v. Eldridge? Well, I mean, McNary and Matthews, they don't have, what you have there is, I'm sorry. Go ahead. What you have there and what this Court has said, particularly regarding McNary, is the touchstone is lack of meaningful judicial review. And so in McNary, the statute only allowed for review from deportation proceedings, and it was on a very limited record. I think it was like four categories of documents. And so by statute, the Court found there was really no meaningful avenue to bring the petitioner's claim in that case. But that's a far cry from what we have here, where all Mr. Ciarcassini would do is litigate his case to its completion and, if agreed, bring his claims to this Court. And Matthews? Matthews, I mean, you don't have the dire circumstances and the real constitutional harm that you're being subjected to through the process itself. So, again, I think when you're talking about having to submit yourself to an administrative proceeding, I think Standard Oil clearly holds that that's not something that, the harm that gets you out of a process. I mean, you have clear legal relief at the end of the day here. So the line that seems to be out there is, no, that's wrong. There is not a clear line out there. But there is, I think we can agree on that. Yeah, so the question here, though, as I approach it, and maybe this is the wrong way to approach it is, constitutional challenges to the statute that you could bring the day after the statute was passed or the hour after the statute's passed, those kinds of challenges to the statute that don't depend on future application. And it does seem like you have cases like Free Enterprise Fund, Johnson, Matthews, that allow those kinds of cases to be brought. And then you do have, though, I think on your side, Elgin and Thunder Basin. You know, Elgin's very tied up with the civil service rules. I'm not saying that's a principle distinction, but that's certainly one issue that's going on in that case. And, again, maybe that's an observation, not a principle, but that was going on in that case. I'm just not sure how to draw the line, really unsure how to draw the line. I'm really unsure about the broader issue of just a constitutional challenge to a statute. You have a statute's passed. You're going to be regulated under that statute. And to tell that person, well, we'll see in three years after you go through the administrative process, seems in tension with some of these cases and some of the principles we have about constitutional adjudication. Well, again, I think the line where it can be drawn, it follows on our side of the ledger. We are applying what appears to me to be Elgin or Thunder Basin or a mix of the two. I mean, you have essentially not a pre-enforcement, but an actual proceeding being initiated and litigated, and these claims all arise out of it. They're not trying to stop the proceeding, by the way. That was the point of my questions to them. I mean, one of your concerns would be it's going to really slow us down. Right. But the answer is it won't slow you down unless they're actually successful. And if they're actually successful, you shouldn't be slowed down, because that means you're operating in an unconstitutional statute. Right. Well, that's true. I mean, if that were going about four steps forward, I think that's true. Just two. All right. But as you can recognize, that's exactly what this Court said in track that you want to avoid, the circumstance in which you have duplicative proceedings and you have arguments about when threshold issues need to be decided and really can be disposed of in the proceeding itself. So your point is that if there's a proceeding ongoing, then the district court doesn't have jurisdiction to consider whether that proceeding should be enjoined. I don't know if I would say it so distinctly. I think there are a lot of factors that are involved. So long as the issues involved, the claims can be determined in that proceeding. So if the SEC started an enforcement proceeding on the basis that a particular company was violating EPA regulations, could you go into district court and enjoin that proceeding? I mean, I'd have to have more information regarding the proceedings. Is it assuming that we have the same sort of exclusive review scheme that we have here? The SEC has no authority whatsoever. Oh. I don't think you have authority over EPA. No, no, no. You're right. I missed that step. Okay. That's the crucial step. Right. Yeah. Well, in that case, there's really no—I think it's fair to concede that if we were bringing a case that was arguing— that was alleging EPA violations, that probably would not be something that could achieve meaningful review through our process. Even though, after the proceeding ended and you tried to impose fines, the Court of Appeals could take care of the case? I think so, yeah. I think I feel pretty comfortable saying okay with that one. Why? Well, I'm not sure what the decision is. Well, because I think—I don't think there—because it's a two-step process in this—the Thunder Basin analysis. I mean, the first one is fairly discernible whether or not Congress has enacted a scheme, right? Well, under even Judge Randolph's example, we still have a statutory review scheme in place. But the thing is, that claim falls outside of it. But presumably, the SEC would have asserted that it falls within. I mean, they bring a proceeding that says, we're trying to enforce the following statute. And it turns out, when you look at the SEC's—the document, whether it's the AP or whatever you call the document, it turns out that everything that's being sought to be enforced is an EPA regulation. So, in theory, you'd have judicial review at the end of the day that would say, that's interesting that you thought that. But you look at this, and you just—it's not within your purview. And this whole proceeding should never have been brought. Right. Yeah, I guess within—I guess I got a little tripped up by this hypo because it's a little far afield. But I think you're right. You could have judicial review at the end of the day of that. I just can't envision us bringing such a case. Can I ask—this may be repetitive, but I want to try this. Sure. Which is, if the constitutional harm is the proceeding itself being subjected to the proceeding itself, there's no way to get that review if you actually prevail in the proceeding. And you might respond, well, if you prevail in the proceeding, you haven't really been harmed. But that ignores, you know, hundreds of thousands of dollars in legal fees, et cetera, that would come from defending yourself in the proceeding. What are we supposed to do with that scenario? Well, the court said in Standard Oil that that is not constitutional harm. And so, therefore, you have to subject yourself to the proceeding. And, again, I think— The court said in a lot of other cases, though, and this is getting really far afield, but cases like Sackett and the like, that you—that's a troubling scenario. Yeah. I think it was Deaver v. Seymour said, you know, it's the cost of living in a democracy. Well, that's a criminal— That's a constitutional democracy. Yeah. Criminal context. I know. That's worse. It's worse in some ways. Right. I mean, you were not able to bring your claim to challenge the appointment of the prosecutor in that case. Right. And the court said, you know, there is— I'm sure. And, interestingly, it has—it goes through some of the same policy rationales that the court adopted in Thunder Basin. The notion that when Congress passed the Rules of Criminal Procedure, giving defendants only a limited right to bring into locatory review, favoring final orders, final judgments, that's very similar to what you have when you look at the fairly discernible from the statutory scheme, whether the intent of Congress is to have an exclusive statutory review scheme. Could you get—you could—I mean, if the SEC goes off the deep end, could you get attorney's fees under Egypt? It's a possibility, yes. Yeah. Yes. So if it's really egregious, then the likelihood of recovering for the expense, at least part of it anyway, is increased. That's true. That's absolutely right. I don't have anything further. Thank you. All right. Thank you. Your Honors, I think that I want to come back, if I could briefly, to addressing or sort of responding to the whole colloquy about all of these subject matter jurisdiction cases. There are several reasons for this court, going back to track and all red sack, we are where we are. This is here now, before this court, properly. The jurisdiction's rights are being denied every day as he's being subjected to this. It's not just the money. There's a whole lot of other reasons why there's significant constitutional harm, and there's D.C. Circuit case law that discusses the continuing harm of a constitutional deprivation. If Jarkissi wins at the commission or loses, either way, this court will then lose the ability or may lose the ability to entertain his claims for injunctive relief. If he's trying to stop the proceeding from proceeding to a final order. May I ask you, is it a bifurcated proceeding with respect to, first of all, the violation of the SEC's rules? That's number one. And number two, what the remedy should be? Or is it a combined proceeding together? It's all a combined proceeding. What was the ALJ's recommendation here? The ALJ's recommendation here, she entered a 30-some page initial decision. That was in October? It was in about, it was in October. I think so, yes, Your Honor. And the, she imposed a disgorgement of over a million dollars and then penalties of $450,000, which is a tiny, tiny fraction of what the Division of Enforcement had sought. The Division of Enforcement is seeking, at this point, about $80 million in punishment. Did the ALJ impose a lifetime, or recommend a lifetime bar? Yes, yes, yes. And so he's barred for life if that's upheld by the commission, and virtually all of these are. And the, it's, for purposes of even the Seventh Amendment argument, it's useful to understand that the losses to the investors in the wake of the financial meltdown in 07-08 was about $15 million. They're requesting $80 million. It's clearly all about punishment. The interesting exchange about criminal, criminal's worse, and going through a criminal proceeding is worse. You could actually argue here with an $80 million hit, which Mr. Jarvis, of course, doesn't have. He's an ordinary guy. You could debate what's worse. This is clearly at least quasi-criminal in nature because it's all about punishment. And that's what the Seventh Amendment cases go to. It's all about the nature of the relief. And all the way back to 1830 in the Parsons case, the U.S. Supreme Court said the focus for Seventh Amendment rights, it hinges on the nature of the relief sought. And then in Tull, the Supreme Court ruled that when they were looking for $22 million, governments looking for $22 million in penalties for Clean Water Act violations because they had multipliers, just like we have here, then there's an absolute right to a jury trial. And in Grand Financiero, the court— I'm thinking back, and I may be wrong about this, but I thought there was a spate of cases in which there's dual investigations, one by the SEC and the other by the Department of Justice, and the subjects or targets of the investigation go into federal court and try to enjoin the SEC from proceeding until the Justice Department has finished its job. But how do those cases fit in? I haven't looked at those cases. Well, I don't know that those cases really fit into the situations. We don't have that here. There was no criminal prosecution of Mr. Jarkissi, so we didn't have a parallel proceeding going on. But do the district courts in those situations—I'm assuming there are cases. Do the district courts say, well, we can't do that, we don't have jurisdiction? District courts stay civil litigation, of course, all the time if it's interfering with an ongoing criminal investigation. How does that fit into the exclusive review proceeding in the court of appeals? It wouldn't fit in very well at all. That's about all I can say about it. It would fit very badly. And the commission—the SEC's position is basically, with some very good answers a moment ago notwithstanding, I'd respectfully submit that their position essentially is that under Thunder Basin Free Enterprise, et cetera, that just about any attack on any lawsuit against the SEC for almost anything is precluded, even things that don't relate to the actual—or occur within the context and the purview of the administrative proceeding that is the sole subject of the statutory review. Statutory—as we say, especially in our reply brief, all of these cases that this court deals with, I suppose, all the time, from Elgin McNary, Thunder Basin Free Enterprise, and on and on, the one thing they do teach that is clear is that every claim has to be looked at individually on an ad hoc basis and compared to the context of the particular statutory review process. You know, one of the common claims, as I recall, and I'm very fuzzy about this, is that the target of the investigation claims that if the SEC is allowed to proceed, the only way I can defend this is to waive my Fifth Amendment rights. Suppose in this situation there was no—well, you may not be aware of a grand jury investigation necessarily, but suppose there was none, and that was your client's claim, that by forcing me through this administrative proceeding, I can't defend myself against a potential criminal investigation. And because if I take the Fifth, it'll be used against me, which is another interesting constitutional question, whether you're paying a price for invoking a constitutional right. But your claim would—you could bring that in the district court? I believe you could bring that in the district court. There are so many things that—all of these cases on subject matter jurisdiction are pretty closely restricted to their facts, and you have to look really carefully, what is the nature of the claim, what does it arise out of, and what is the scope and nature of the specific statutory review procedure that's available there? And we don't think that the statutory review, just because you can, obviously, you could bring up just about everything that has to do with the agency and what the agency's done during or before or outside of the administrative proceeding in the statutory review, but to have to wait, as in free enterprise, to have to wait and go through that process, we don't believe that that's what the case law stands for. As I said before, these are pure questions of constitutional law. We don't need the commission's opinion. This court doesn't need the commission's opinion or their view of the Seventh Amendment separation of powers in order to rule. With regard to the prejudgment claim, that's just a blatant and egregious prejudgment. There's not an argument around it. It's far worse than the Cinderella finishing school and Texaco cases out of this circuit where stray comments made by a commissioner just implicitly referring to a current target of an enforcement proceeding. Here they, in another party's case, not part of our record in this administrative proceeding, ruled that Jarkissi was guilty two months before his trial, before his administrative trial. That's already been up to the commission. They've already issued their opinion on that. It was thorough. It was thoroughly brief. They thoroughly rejected the claim. This court's case law makes clear that that renders the proceedings void. Once the proceedings are void, they're void, and we think this court should stop the proceedings now. And under a tract, particularly, this court has jurisdiction to do that. Okay. Thank you very much. Thank both sides for their arguments. The case is submitted.
judges: Kavanaugh, Srinivasan, Randolph